**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY a/s/o COWORX STAFFING SERVICES,<br><br>Plaintiff,<br><br>vs.<br><br>CONGRUITY 360, LLC, TRUSTWAVE HOLDINGS, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:25-cv-15657-SDW-JSA |

**SECOND AMENDED COMPLAINT**

COMES NOW, Plaintiff, ACE AMERICAN INSURANCE COMPANY as subrogee of COWORX STAFFING SERVICES, by and through undersigned counsel and pursuant to the Order of this Court dated June 24, 2026, hereby files this Second Amended Complaint against Defendants CONGRUITY360, LLC and TRUSTWAVE HOLDINGS, INC. and alleges the following:

**THE PARTIES**

1. Plaintiff, Ace American Insurance Company (hereinafter "Plaintiff" or "Ace"), is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business located in Pennsylvania.

2. At all times material to this action, Plaintiff was authorized to do business and issue policies in New Jersey.

3. At all times material to this action, Plaintiff provided cyber insurance coverage to CoWorx Staffing Services (hereinafter "Insured" or "CoWorx") for its computer network and data.

4. Defendant, Congruity 360, LLC (hereinafter "Congruity"), is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 456 Bedford Street Fall River, MA 02720.

5. Defendant, Trustwave Holdings, Inc. (hereinafter "Trustwave"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 70 W. Madison St. Suite 600 Chicago, IL 60602.

6. At all times material to this action, Defendants were engaged in the cloud sourcing and cybersecurity business.

## JURISDICTION AND VENUE

7. The jurisdiction of the Court is proper pursuant to 28 U.S.C. § 1332 as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the defendant resides in this district or the events or omissions giving rise to the claim occurred within this district.

## FACTUAL ALLEGATIONS

9. On July 28, 2022 CoWorx contracted with Congruity to provide virtual machines ("VMs") running Microsoft Windows to run CoWorx's web-applications.

10. Congruity did this by running VMWare ESX servers to host the virtual Microsoft Windows machines, which CoWorx did not have access to.

11. CoWorx did, however, have guest access to the Microsoft Windows VMs at Congruity's co-location facility and the web-applications running on those machines.

12. Under the contract, Congruity was responsible for provisioning new VMs as needed by CoWorx, as well as securing the host virtualization servers and network.

13. Additionally, under Section 1.10 of Exhibit A to the Master Services Agreement between Congruity and CoWorx, Congruity was responsible for providing "[s]afeguards to secure the operation of the IT systems that contain CoWorx Data" including remote access controls such as multi-factor authentication ("MFA").

14. Despite this clear contractual requirement, from the signing of the contract up to the date of loss, Congruity never established nor enforced MFA to log into the network.

15. CoWorx, on the other hand, was responsible for security of the network at the guest VM level.

16. To this end, on February 4, 2022, CoWorx contracted with Trustwave to monitor all Microsoft Windows endpoints, including, upon information and belief, the guest level VMs hosted at Congruity's co-location facility.

17. Trustwave installed CyberReason Managed Detection and Response (MDR) software on the CoWorx server and fed logs and other information to Trustwave's Security Operations Center ("SOC") which monitors the network 24/7.

18. On or about April 18, 2024, threat actors logged into one of the Microsoft Windows VMs on the Congruity infrastructure using a compromised password from a CoWorx user.

19. Had Congruity enabled MFA prior to the threat actor's unauthorized access, the server would have required acknowledgement of a push notification before allowing external access, thwarting the breach from ever occurring.

20. Thus, absent the additional security of MFA, the threat actors were able to access the Congruity infrastructure with the compromised password alone.

21. The compromised CoWorx user account did not have administrative access to any Congruity server, either guest or host.

22. Despite this, the threat actors were able to elevate permissions, dump credentials out of memory, and log into the VMWare ESX host server.

23. This shows that Congruity set up the server environment incorrectly, as no user should have been able to reach the host network from the guest network, especially considering that CoWorx did not have access to the host VMWare ESX servers.

24. On or about April 22, 2024, four days after the initial breach, Trustwave's CyberReason software alerted that a Local Security Authority Subsystem Service ("LSASS") event had occurred.

25. Despite the severity of the data breach, Trustwave only categorized the LSASS alert as "Moderate" rather than "High" or "Critical."

26. Accordingly, Trustwave did not properly alert CoWorx of the breach, robbing CoWorx of the opportunity to investigate the incident and backup its files.

27. Approximately five days later, on or about April 27, 2024, the threat actors encrypted the VMs at the host network level and installed ransomware, requiring CoWorx to purchase the decryptor because it did not have backups of the encrypted files.

28. Had Trustwave properly categorized the LSASS event as "High" or "Critical" and properly alerted CoWorx of the breach, CoWorx would have backed up its compromised files, thus nullifying the impact of encryption and mitigating CoWorx's damages.

29. Plaintiff was obligated to pay for the covered damages due to the breach and decryption, pursuant to its policy of insurance with CoWorx.

30. Pursuant to its policy of insurance, Plaintiff has suffered damages in excess of $500,000.

31. Plaintiff is equitably and contractually subrogated to the rights, claims, interests, and causes of action belonging to CoWorx and is entitled to recover damages from the Defendants.

## CAUSES OF ACTION

### COUNT I-BREACH OF CONTRACT
***Ace v. Congruity***

32. Plaintiff repeats and realleges the preceding paragraphs as though set forth at length herein.

33. Upon information and belief, at the time of the unauthorized access to CoWorx's network, Congruity was engaged in the performance of a contract with CoWorx to set up and secure the host VMWare ESX servers at Congruity's co-location facility.

34. Upon information and belief, pursuant to its contract with CoWorx, Congruity assumed the nondelegable duty to perform the terms of the contract, including properly establishing the networks and enforcing MFA, in a thorough, complete, and non-negligent manner.

35. Specifically, pursuant to Section 1.2 of Exhibit A to the Master Services Agreement with CoWorx, Congruity agreed to "establish and maintain commercially reasonable environmental, safety and facility procedures, data security procedures and other safeguards against the destruction, corruption, loss or alteration of CoWorx Data and to prevent access, intrusion, alteration or other interference by any unauthorized third parties of the same, and such safeguards shall be (a) no less rigorous than those maintained by Congruity360 for its own information or the information of customers of similar nature; and (b) no less rigorous than the generally-accepted practices in the industry. Without limiting the generality of the foregoing, Congruity360 shall…utilize commercially reasonable administrative, technical and physical

safeguards to protect the confidentiality, integrity and accessibility of CoWorx Data consistent with then-current industry standards and generally accepted security practices."

36. Pursuant to Section 1.10 of Exhibit A to the Master Services Agreement, Congruity further agreed to several following safeguards to secure the operation of the IT Systems, including but not limited to Windows and Host System patching; technical architecture and network infrastructure management; patch and vulnerability management programs; network management and security controls, including network segregation and defense in depth; and industry standard intrusion detection and prevention technology (IDS/IPS) designed to detect unauthorized activity prior to entering or exiting the network firewalls maintained by Congruity360.

37. Section 2 of Exhibit A to the Master Services Agreement outlines several obligations of Congruity in the event of a security breach, including but not limited to requiring an incident response plan and program in order to bring needed resources together, that Congruity will notify CoWorx of a breach within twelve hours of a security incident, that Congruity will preserve all evidence associated with the security incident, that Congruity will conduct an investigation into an incident and report the findings to CoWorx.

38. Section 2 of Statement of Work No. 1 between Congruity and CoWorx states that Congruity "designed an IT system solution" to support CoWorx, including that all virtual machines would be backed up to Congruity360's centralized backup environment, and was to allow "for separation of failure domains."

39. Congruity breached its contractual duties by, inter alia, failing to set up the host and guest networks correctly, which, inter alia, did not allow for complete separation of failure domains.

40. Congruity also failed to install and enforce MFA.

41. Congruity's breach of its contractual duties allowed threat actors to access the guest network with only a compromised CoWorx password, elevate permissions, access the host network and ultimately encrypt CoWorx's data files and install ransomware.

42. As a direct, proximate, and foreseeable result of Congruity's breach of contract, Plaintiff Ace has been damaged in an amount in excess of $500,000.

**WHEREFORE**, Plaintiff Ace requests that judgment be entered in its favor and against Defendant CONGRUITY360, LLC. for an amount to be proven at trial, for interest and cost and attorney fees as allowed by law, and for such other and further relief as this Court deems equitable and just.

**COUNT II-BREACH OF CONTRACT**
***Ace v. Trustwave***

43. Plaintiff repeats and realleges the preceding paragraphs as though set forth at length herein.

44. Upon information and belief, at the time of the unauthorized access to CoWorx's network, Trustwave was engaged in the performance of a contract with CoWorx to monitor and secure the guest level VMs hosted at Congruity's co-location facility and properly alert CoWorx of unauthorized breaches.

45. Specifically, CoWorx had purchased eight products from Trustwave, including MSS-THREAT-FUSION-5, MSS-ENDPOINT, SPL-MST (for three years), MSS-MDR-MCPP, MSS-MDR-ADVANCED, and CPS-SC-AnnualSubscription-Core.

46. Upon information and belief, pursuant to its contract with CoWorx, Trustwave assumed the nondelegable duty to perform the terms of the contract, including monitoring the guest network, correctly categorizing security threats, and promptly and properly alerting CoWorx to security threats, in a thorough, complete, and non-negligent manner.

47. Trustwave's Managed Detection Response Terms and Conditions[1] required Trustwave to "manage and monitor the security configuration of those Client security applications running on the Managed Technology which are included as indicated in the applicable SOW or Order form"; required trust waive to "monitor the health and availability of the alert and event data from the Managed Security Application that is connected to the Trustwave fusion platform" and stated that Trustwave will "analyze and raise Security Incidents, Fusion Alerts, investigations, and reports identified by Trustwave from Security Events in Client's environment."

48. Trustwave breached its contractual duties by failing to properly categorize the threat actor's unauthorized breach as "High" or "Critical" and failing to properly alert CoWorx of the breach in a prompt manner.

49. Trustwave did not properly monitor the system by failing to detect the Threat Actor's activity for four days following the initial breach, and thereafter failed for five days to properly categorize the unauthorized activity before the Threat Actor encrypted the system.

50. Specifically, after finally detecting the breach, Trustwave categorized the unauthorized breach as "Medium", which dictated an email notification only, rather than "High" or "Critical", which would have both dictated client notification via email, phone, and application.

51. This failure to properly categorize the breach prevented CoWorx from receiving proper notification of the unauthorized breach.

52. Trustwave's breach of its contractual duties prohibited CoWorx from backing up its files, potentially nullifying the ransomware installed and mitigating CoWorx's damages.

---

1 https://www.levelblue.com/hubfs/Web/Library/Legal_PDF/Managed_Detection_and_Response_on_Fusion2.pdf

53. As a direct, proximate, and foreseeable result of Trustwave's breach of contract, Plaintiff Ace has been damaged in excess of $500,000.

**WHEREFORE**, Plaintiff Ace requests that judgment be entered in its favor and against Defendant TRUSTWAVE HOLDINGS, INC. for an amount to be proven at trial, for interest and cost and attorney fees as allowed by law, and for such other and further relief as this Court deems equitable and just.

Dated: 7/24/26

Respectfully submitted,

*/s/ Kyle B. Rice*

Kyle B. Rice
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Phone: (215) 665-2753
krice@cozen.com
*Attorneys for Plaintiff*